SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

### Paul Barila v. Board of Education of Cliffside Park (A-39-18) (081626)

**Argued September 23, 2019 -- Decided April 20, 2020**

**PATTERSON, J., writing for the Court.**

The Court considers two issues. First, did the trial court have subject matter jurisdiction to consider this case, or is the controversy a scope-of-negotiations dispute within the exclusive jurisdiction of the Public Employee Relations Commission (PERC)? Second, do the plaintiffs here have "vested and/or contractual rights" to unused sick leave compensation up to the previous cap of $25,000, notwithstanding the 2015 collective negotiations agreement between the Board of Education of Cliffside Park and the Cliffside Park Education Association, the exclusive collective bargaining representative for all teaching staff members employed by the Cliffside Park School District, under which the cap on the compensation that a teacher would receive for accumulated unused sick leave when he or she retired was reduced to $15,000?

The right of a teacher in the Cliffside Park School District to be compensated for any accumulated sick leave days unused at the time of his or her retirement derives not from statute, but entirely from the collective negotiations agreements between the Board and the Association. The Court reviews the details of the 2012 and 2015 Agreements.

Consistent with the collective negotiations agreements in effect for the previous twenty years, the 2012 Agreement capped compensation for unused sick leave at $25,000. The Board and the Association agreed that their 2012 Agreement set forth their "full and complete understanding," and that it could not be "amended or modified in any way . . . except by written agreement ratified and executed by both parties." The 2012 Agreement stated that it would "continue in full force and effect, with all attendant benefits and responsibilities to the Board and the Association, until a successor agreement is ratified by the Board and the Association."

In the 2015 Agreement, the cap on unused sick leave was lowered to $15,000, apparently in exchange for concessions by the Board in other areas of negotiation. As they had for the 2012 Agreement, the Board and the Association agreed that the 2015 Agreement contained their "full and complete understanding" and provided that it would "continue in full force and effect . . . until a successor agreement is ratified." It contained a "Savings Clause," identical to the corresponding provision of the 2012 Agreement, that

1

stated in part: "Unless otherwise provided in this Agreement, nothing contained herein shall be interpreted and/or applied so as to eliminate, reduce or otherwise detract from any Teacher benefit existing prior to the effective date of this agreement."

Plaintiffs are teachers who had accumulated sick leave that would have been worth more than $15,000 under prior collective negotiations agreements if it remained unused at the time of the teacher's retirement. Plaintiffs objected to the lowering of the cap, and the Association asked the Board to amend the 2015 Agreement to "grandfather" plaintiffs and others similarly affected by applying the $25,000 cap to them. The Board declined to do so unless the Association agreed to renegotiate the salary guides for teachers or to reduce the amount of tuition credit reimbursement available to teachers. The Association declined to make either concession, and the 2015 Agreement was ratified.

Plaintiffs sued the Board, asserting a claim for "vested and/or contractual rights." They contended that they had a vested right to unused sick leave compensation up to the previous cap of $25,000, and that the Board and the Association lacked authority to negotiate away that right without each plaintiff's consent. Plaintiffs moved for summary judgment on that claim, and the Board cross-moved for summary judgment, contending that the controversy was a scope-of-negotiations dispute within the exclusive jurisdiction of PERC.

The trial court rejected the Board's challenge to subject matter jurisdiction. Reasoning that a teacher's right to compensation for accumulated sick leave vests when he or she fulfills the service conditions of a collective negotiations agreement and that his or her vested right to that compensation survives the expiration of that agreement, the court concluded that the Board and the Association lacked the authority to bargain away plaintiffs' vested right to be compensated for unused accumulated sick leave up to $25,000. It therefore granted summary judgment in favor of plaintiffs on their vested-rights claim. Relying primarily on case law, the Appellate Division affirmed both the trial court's assertion of subject matter jurisdiction and its judgment on plaintiffs' vested-rights claim. The Court granted certification. 236 N.J. 259 (2019).

**HELD:** The Court concurs with the Appellate Division that the parties' dispute did not raise a scope-of-negotiations question and that the trial court therefore properly asserted subject matter jurisdiction. However, the Court reverses the Appellate Division's judgment on the vested-rights claim. As the governing contracts made clear, a given teacher's right to sick leave compensation did not vest until that teacher, having served the length of time required by the agreement, retired or otherwise separated from employment with his or her sick leave still unused. When the Board and the Association limited such compensation in their 2015 Agreement for the Association's members, they did not infringe on a vested right. The cases on which the trial court and Appellate Division relied address issues distinct from those involved here and warrant no departure from the unambiguous contractual terms to which the Board and the Association agreed.

2

1. In a scope-of-negotiations determination, the court's role is to determine, in light of the competing interests of the State and its employees, whether an issue is appropriately decided by the political process or by collective negotiations. Under the scope-of-negotiations test that the Court prescribed in In re Local 195, a subject matter must meet three requirements to be deemed negotiable. 88 N.J. 393, 403-04 (1982). First, the subject must "intimately and directly affect[] the work and welfare of public employees." Id. at 403. Second, the subject must not have been "preempted by statute or regulation." Ibid. Third, the subject must be one "on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy." Id. at 404. (pp. 21-23)

2. Here, plaintiffs' challenge to the Board's and Association's authority to bargain rights that plaintiffs contend were vested bears no resemblance to a contention that the subject matter in dispute is a non-negotiable managerial prerogative. The trial court correctly invoked its subject matter jurisdiction in this case. (pp. 23-24)

3. In their 2012 Agreement, the Board and the Association identified two categories of teachers who would be entitled to payment for unused sick leave under that Agreement's compensation formula, which capped total payments at $25,000. The first category applied to teachers who had served the District for at least ten years and then retired; the second category included teachers who had served the District for at least twenty-five years and who had the left employment with the Board for any reason. The 2012 Agreement provided no additional right to be paid for accumulated unused sick leave to a teacher still employed by the Board when that Agreement's term came to an end. Nothing in the 2012 Agreement suggests -- let alone creates -- a vested right to apply that Agreement's compensation formula upon retirement or other separation from service during the term of a successor agreement. (pp. 26-30)

4. In the 2015 Agreement, the Board and the Association retained the eligibility criteria prescribed in the 2012 Agreement for unused sick leave compensation but modified the terms of that compensation. Plaintiffs and the Board stipulated that "[t]he Association knowingly bargained the modified accumulated sick leave provision in the [2015] Agreement," and plaintiffs' objections prompted the Association to ask the Board that that the cap on plaintiffs' and other affected members' compensation be "grandfathered." The Board rejected that request unless the Association made a concession that the Association refused. Plaintiffs made no claim that the contract language was ambiguous, but rather challenged the 2015 Agreement based solely on the contention that the Board and the Association lacked the authority to alter the compensation formula as applied to teachers in plaintiffs' position. Accordingly, the 2015 Agreement clearly expressed the intent of the Board and the Association to alter the compensation formula for all teachers who remained in service, including teachers who had accumulated unused sick leave during the terms of prior agreements. (pp. 31-34)

3

5.  The trial court and Appellate Division did not rely on contractual language when they ruled that plaintiffs had a vested right to compensation under the 2012 Agreement, instead determining that case law recognized such a vested right.  The Court explains why it disagrees with the courts' reliance on the cases they cited.  For example, the circumstances addressed in Owens v. Press Publishing Co., 20 N.J. 537 (1956), starkly differ from the setting of this appeal.  In Owens, the contract at issue clearly provided that the severance pay was earned and would be available in the event of an employee's discharge for any reason other than gross misconduct.  Id. at 541.  Nonetheless, the employer sought to unilaterally abrogate the employees' wholly earned contractual rights.  Id. at 542.  Here, the Board and the Association agreed to adjust the compensation cap.  Owens does not address the issues raised by this appeal.  And, in In re Morris School District Board of Education, the Appellate Division expressly declined to confront the issue raised by this appeal:  whether an unambiguous agreement between a school district and a majority representative to reduce the cap on compensation for unused sick leave for all teachers in the bargaining unit must be rejected as implicating a vested right accrued under prior agreements.  310 N.J. Super. 332, 342-48 (App. Div. 1998).  Neither those cases nor others cited warrant the rejection of the 2015 Agreement's clear and unambiguous provision addressing accumulated unused sick leave.  Instead, the case law underscores the critical importance of contractual intent.  (pp 34-38)

6.  The trial court and the Appellate Division erred when they concluded that the Board and the Association lacked the authority to reduce the cap on unused accumulated sick leave compensation from $25,000 to $15,000.  In light of the contractual language and the record before the trial court, the court should have denied plaintiffs' motion for summary judgment as to their vested-rights claim and entered summary judgment in favor of the Board with respect to that claim.  (p. 39)

**REVERSED.  Summary judgment is entered in favor of the Board.**

**JUSTICE ALBIN, dissenting in part and concurring in part,** concurs with the majority that the trial court correctly invoked its subject matter jurisdiction in this case.  Justice Albin expresses the view, however, that plaintiffs were promised deferred income under previous collective negotiations agreements and were entitled to rely on those promises.  Stressing the import of the "Savings Clause" of the 2015 Agreement and noting that the parties' stipulations about the meaning of the 2015 Agreement cannot override the Agreement's language, or lack of language, Justice Albin notes that there are no clear and unambiguous words that suggest the 2015 Agreement's sick-leave cap applies retroactively to extinguish plaintiffs' right to compensation for accrued sick leave under prior agreements.

**JUSTICES LaVECCHIA, FERNANDEZ-VINA, and SOLOMON join in JUSTICE PATTERSON's opinion.  JUSTICE ALBIN dissents in part and concurs in part, joined by CHIEF JUSTICE RABNER and JUSTICE TIMPONE.**

4

# SUPREME COURT OF NEW JERSEY
## A-39 September Term 2018
### 081626

Paul Barila, William J. Ludwig,
Candace R. Kantor, and Dennis Enrico,

Plaintiffs-Respondents,

v.

Board of Education of Cliffside Park,
Bergen County,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| September 23, 2019 | April 20, 2020 |

Stephen R. Fogarty argued the cause for appellant
(Fogarty & Hara, attorneys; Stephen R. Fogarty, of
counsel and on the briefs, and Robert D. Lorfink, on
the briefs).

Richard A. Friedman argued the cause for respondents
(Zazzali, Fagella, Nowak, Kleinbaum & Friedman,
attorneys; Richard A. Friedman, of counsel and on the
briefs, and Raymond M. Baldino, Craig A. Long, and
Edward M. Suarez, Jr., on the briefs).

Robert A. Greitz argued the cause for amici curiae
New Jersey School Boards Association and New
Jersey State League of Municipalities (Cynthia J.

1

Jahn, General Counsel, attorney; Robert A. Greitz, on the brief).

Steven R. Cohen argued the cause for amicus curiae New Jersey Education Association (Selikoff & Cohen, attorneys). Louis P. Bucceri and Albert J. Leonardo, on the brief (Bucceri & Pincus).

JUSTICE PATTERSON delivered the opinion of the Court.

This appeal arises from the July 1, 2015 collective negotiations agreement (the 2015 Agreement) between the Board of Education of Cliffside Park (the Board) and the majority representative of the school district's teachers, the Cliffside Park Education Association (the Association). In exchange for the Board's significant concessions on other issues, the Association agreed to a reduction in the cap on the maximum amount of compensation that a teacher would receive for accumulated unused sick leave when he or she retired; instead of the $25,000 cap on that compensation prescribed by previous collective negotiations agreements, the 2015 Agreement provided for a $15,000 cap.

After the Association informed its members of the change, plaintiffs Paul Barila, William J. Ludwig, Candace R. Cantor, and Dennis Enrico, all Cliffside Park teachers who had not yet retired, objected to the new provision. Each plaintiff had accumulated sick leave that would have been worth more

2

than $15,000 under prior collective negotiations agreements in the event that the sick leave remained unused at the time of the teacher's retirement. Notwithstanding plaintiffs' objection, the Association's members ratified the new agreement.

Plaintiffs sued the Board, asserting a claim for "vested and/or contractual rights." They contended that they had a vested right to unused sick leave compensation up to the previous cap of $25,000, and that the Board and the Association lacked authority to negotiate away that right without each plaintiff's consent. The Board moved to dismiss plaintiffs' claim pursuant to Rule 4:6-2(e), and the trial court denied that motion.

Following discovery, plaintiffs moved for summary judgment on their vested-rights claim. In a cross-motion for summary judgment, the Board challenged the trial court's subject matter jurisdiction, contending that the controversy was a scope-of-negotiations dispute within the exclusive jurisdiction of the Public Employee Relations Commission (PERC). The Board argued that plaintiffs had no vested right to sick leave compensation up to the $25,000 cap set forth in prior agreements.

The trial court rejected the Board's challenge to subject matter jurisdiction. It concurred with plaintiffs that the 2015 Agreement deprived plaintiffs of rights that had vested during the terms of prior agreements and

3

accordingly denied the Board's motion to dismiss. The trial court granted summary judgment in plaintiffs' favor and denied the Board's cross-motion. The Appellate Division affirmed the trial court's assertion of subject matter jurisdiction and its judgment on plaintiffs' vested-rights claim, relying on case law rather than the language of the relevant collective negotiations agreements.

We concur with the Appellate Division that the parties' dispute did not raise a scope-of-negotiations question and that the trial court therefore properly asserted subject matter jurisdiction. However, we reverse the Appellate Division's judgment on the vested-rights claim. As the governing contracts made clear, a given teacher's right to sick leave compensation did not vest until that teacher, having served the length of time required by the agreement, retired or otherwise separated from employment with his or her sick leave still unused. When the Board and the Association limited such compensation in their 2015 Agreement for the Association's members, they did not infringe on a vested right. The cases on which the trial court and Appellate Division relied address issues distinct from those involved here and warrant no departure from the unambiguous contractual terms to which the Board and the Association agreed.

Accordingly, we reverse the Appellate Division's judgment, vacate the orders granting summary judgment in favor of plaintiffs and denying the

4

Board's motion for summary judgment, and enter summary judgment in favor of the Board.

I.

A.

In N.J.S.A. 18A:30-2, the Legislature entitled several categories of school employees to "sick leave with full pay for a minimum of 10 school days in any school year." It defined "sick leave" to be "the absence from his or her post of duty, of any person because of personal disability due to illness or injury, or because he or she has been excluded from school by the school district's medical authorities on account of a contagious disease or of being quarantined for such a disease in his or her immediate household." N.J.S.A. 18A:30-1.

Another provision permits qualified school employees to accumulate their unused sick leave from year to year: "If any such person requires in any school year less than the specified number of days of sick leave with pay allowed, all days of such minimum sick leave not utilized that year shall be accumulative to be used for additional sick leave as needed in subsequent years." N.J.S.A. 18A:30-3.

However, the Legislature did not enact a statute entitling a school employee to compensation for sick leave that remains unused when his or her

employment ends.[1]  Accordingly, the right of a teacher in the Cliffside Park

School District to be compensated for any accumulated sick leave days unused

at the time of his or her retirement or other separation from the school district

derives entirely from the collective negotiations agreements between the Board

and the Association.  The sick leave compensation provisions of two collective

negotiations agreements between the Board and the Association are thus at the

center of this case.

B.

1.

Plaintiffs are members of the Association, which is the exclusive

collective bargaining representative for all teaching staff members employed

by the Cliffside Park School District.[2]  As a majority representative, the

---

[1]  The Legislature addressed compensation to school employees for unused
sick leave in N.J.S.A. 18A:30-3.6.  That provision applies "only to officers and
employees who commence service with the board of education, or the agency
or instrumentality thereof, on or after [its] effective date" of May 21, 2010.
Ibid.  With respect to those later-hired employees, N.J.S.A. 18A:30-3.6 bars
boards of education and their agencies and instrumentalities from paying
"supplemental compensation to any officer or employee for accumulated
unused sick leave in an amount in excess of $15,000."  Because plaintiffs
commenced service with the Board prior to May 21, 2010, N.J.S.A. 18A:30-
3.6 has no bearing on this appeal.

[2]  We derive our summary of the facts from the parties' stipulations, the
deposition testimony, and other factual materials presented to the trial court
during the summary judgment proceedings.

6

Association is "entitled to act for and to negotiate agreements covering all employees in the unit." N.J.S.A. 34:13A-5.3.

On July 1, 2012, the Board and the Association entered into a collective negotiations agreement "in effect from July 1, 2012 through June 30, 2015" (the 2012 Agreement). In accordance with N.J.S.A. 18A:30-2, the 2012 Agreement entitled plaintiffs to "ten (10) sick leave days with full pay in each school year." It provided that "[u]nused sick leave days shall, in accordance with the provisions of N.J.S.A. 18A:30-3, be accumulated from year to year with no maximum limit." A teacher who used no sick days or personal days in a given school year was entitled to an annual attendance bonus of $1200, and a teacher who used no sick days and only one personal day was entitled to an annual attendance bonus of $800.

Consistent with the collective negotiations agreements in effect for the previous twenty years, the 2012 Agreement between the Board and the Association provided for compensation for unused accumulated sick leave as follows:

> 3. Any teacher, who, as of the end of any school year beginning with 09-10, has either served the District at least ten (10) years and has retired under the Teachers' Pension and Annuity Fund upon such retirement or has served the District at [least] twenty-five (25) years and

7

leaves the employ of the Board for any reason,[3] shall be paid according to the table:

Formula for unused sick leave:
First 100 days      X  $125.00/day
Second 100 days    X  $0.00/day
Up to next 72 days  X  $175.00/day
Maximum is $25,000.00

The Board and the Association agreed that their 2012 Agreement set forth "the full and complete understanding between the Board and the Association," and that it could not be "amended or modified in any way, in whole or in part, except by written agreement ratified and executed by both parties in the same manner as this Agreement." The 2012 Agreement stated that it would "continue in full force and effect, with all attendant benefits and responsibilities to the Board and the Association, until a successor agreement is ratified by the Board and the Association."

When the Board and the Association negotiated the terms of their successor agreement, they retained the formula for annual attendance bonuses set forth in the 2012 Agreement. The provision for accumulated unused sick leave at retirement or other separation from service, however, was a primary focus of their discussions. According to the deposition testimony of Anita

---

[3] Based on the parties' stipulations and the Association's interpretation of the Agreements, it appears that in both the 2012 Agreement and the 2015 Agreement the term "at twenty-five (25) years" should be read to mean "at least twenty-five (25) years."

Ferrante, the Association's President and chief negotiator, the Association proposed an increase in the per diem compensation for the first one hundred days of unused sick leave from $125 per day to $150 per day, with a continuation of the 2012 Agreement's $25,000 cap on total compensation for accumulated unused sick leave. The Board rejected that proposal. The Board and the Association eventually agreed to a $15,000 cap on total compensation for unused sick leave. The Board agreed to the increase in the per diem compensation for unused sick leave from $125 per day to $150 per day for the first one hundred days, and made additional concessions on unrelated issues.

The 2015 Agreement thus included the following provision addressing compensation for unused sick leave:

> Any teacher, who, as of the end of any school year beginning with 09-10, has either served the District at least ten (10) years and has retired under the Teachers' Pension and Annuity Fund upon such retirement or has served the District at [least] twenty-five (25) years and leaves the employ of the Board for any reason, shall be paid according to the table:
>
> Formula for unused sick leave:
>
> Up to a maximum of 100 days @     $150.00/day
> Maximum is $15,000.00

The parties agree on the meaning of that provision; they stipulated that the 2015 Agreement "reduc[ed] the maximum amount of compensation that could be paid for accrued, unused sick leave to $15,000," and "increase[ed] the

9

amount of compensation for the first 100 days of accumulated sick leave from $125 per day to $150 per day."  Significantly, the parties stipulated that "[t]he Association knowingly bargained the modified accumulated sick leave provision" that appeared in the 2015 Agreement.

As they had for the 2012 Agreement, the Board and the Association agreed that the 2015 Agreement contained their "full and complete understanding" and could "not be amended or modified in any way, in whole or in part, except by written agreement ratified and executed by both parties in the same manner as this Agreement."  The 2015 Agreement provided that it would "continue in full force and effect, with all attendant benefits and responsibilities to the Board and the Association, until a successor agreement is ratified by the Board and the Association."  It contained a "Savings Clause," identical to the corresponding provision of the 2012 Agreement, that stated:

> Except as this Agreement shall otherwise provide, all terms and conditions of employment applicable on the effective date of this Agreement shall continue to be so applicable during the term of the Agreement.  Unless otherwise provided in this Agreement, nothing contained herein shall be interpreted and/or applied so as to eliminate, reduce or otherwise detract from any Teacher benefit existing prior to the effective date of this agreement.

The 2015 Agreement provided that it would be effective on July 1, 2015.

2.

When the Board and the Association entered into the 2015 Agreement, plaintiffs Barila, Ludwig, Kantor, and Enrico were teachers who had been employed by the Board for at least ten years. All were members of the bargaining unit represented by the Association.

Each plaintiff accumulated substantial unused sick leave in accordance with N.J.S.A. 18A:30-3. Plaintiff Barila accumulated 308.5 sick days; plaintiff Ludwig accumulated 263 sick days; plaintiff Kantor accumulated 233 sick days; and plaintiff Enrico accumulated 282.5 sick days. As calculated under the per diem provisions and $25,000 cap of the 2012 Agreement, if unused at the time of retirement or other separation from service, the accumulated sick leave of plaintiffs Barila, Ludwig, and Enrico would have entitled them to $25,000, and the accumulated sick leave of plaintiff Kantor would have entitled her to $18,275. Accordingly, plaintiffs' potential compensation upon retirement or other separation from service, in the event that their accumulated sick leave remained unused, was directly affected by the $15,000 cap set forth in the 2015 Agreement.

The import of the change was immediately apparent to plaintiffs. As the parties stipulated, "[u]pon learning of the modification of the accumulated sick leave provision," plaintiffs and other "affected individuals" objected to the

11

revised terms. They further stipulated that when the Association presented the 2015 Agreement to its members, plaintiffs maintained their objections and did not vote to ratify that Agreement, but that the 2015 Agreement was nonetheless ratified by the Association's members.

In light of plaintiffs' objections, the Association asked the Board to amend the 2015 Agreement to "grandfather" plaintiffs and other affected members of the bargaining unit by applying the $25,000 cap on accumulated unused sick leave compensation to them. The Board declined to do so unless the Association agreed to renegotiate the salary guides for teachers or to reduce the amount of tuition credit reimbursement available to teachers. The Association declined to make either concession. The Board then ratified the 2015 Agreement, with the provision addressing compensation for accumulated unused sick leave unchanged.

II.

A.

Plaintiffs filed a complaint in the Chancery Division. They asserted no claim against the Association and instead named the Board as the sole defendant. They alleged a violation of their "vested and/or contractual rights" to compensation for accumulated unused sick leave up to $25,000 based on the

12

terms of prior collective negotiations agreements.[4]  Plaintiffs sought a declaratory judgment that the Board breached its contractual obligations to plaintiffs and deprived plaintiffs of their vested rights when it agreed to a $15,000 cap.  They also sought an order mandating specific performance of the Board's alleged obligation to compensate plaintiffs under the predecessor agreements' $25,000 cap.

After this action was filed, plaintiffs Barila and Kantor retired with their accumulated sick leave still unused.  In accordance with the modified compensation formula prescribed by the 2015 Agreement, the Board paid them $150 per day for a maximum of 100 days, capped at $15,000, for their unused sick leave.  The Board confirmed that the same formula would govern any compensation due to plaintiffs Ludwig and Enrico for their accumulated unused sick leave at the time of their retirements.

---

[4]  In a separate count of their complaint, plaintiffs claimed that the Board violated the Contract Clause of the New Jersey Constitution, N.J. Const. art. IV, § 7, ¶ 3, by impairing their "earned, vested, and constitutionally protected contractual rights," and asserted a claim for that alleged constitutional violation under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2.  The trial court granted the Board's cross-motion for summary judgment dismissing plaintiffs' constitutional and New Jersey Civil Rights Act claims.  Plaintiffs did not appeal that determination, and those claims are not before the Court.

Pursuant to Rule 4:6-2(e), the Board moved to dismiss the complaint for failure to state a claim upon which relief can be granted. The trial court denied the motion to dismiss.

After the parties conducted discovery, plaintiffs moved for summary judgment on their vested-rights claim. They argued that the Board and the Association lacked authority to alter teachers' vested rights to be paid in accordance with the unused sick leave compensation formula of the 2012 Agreement and other predecessor collective negotiations agreements.

The Board cross-moved for summary judgment dismissing plaintiffs' vested-rights claim. It challenged the trial court's subject matter jurisdiction over the matter, asserting that plaintiffs' contentions about the authority of the Board and the Association to modify the sick leave compensation formula raised a scope-of-negotiations issue within PERC's exclusive jurisdiction. On the merits, the Board contended that the Association, as majority representative, had the authority to negotiate the question of unused sick leave compensation on behalf of the bargaining unit, and that it knowingly and voluntarily agreed to the change.

During the summary judgment hearing, the trial court questioned plaintiffs' counsel to ensure that plaintiffs made no claim of contractual ambiguity. The court asked plaintiffs' counsel whether it was necessary, in

14

order for it to decide the cross-motions, that it make a finding that the Association "plainly understood what it was doing when it negotiated this agreement at your client's expense." Plaintiffs' counsel responded that he did not think the issue of "whether they understood it or not" was relevant because the Association lacked authority to alter the compensation provision. The court specifically asked, "[b]ut there's no question, I mean, there's no ambiguity." Plaintiffs' counsel responded, "[n]o, I don't think there's any dispute that they understood what they were doing." Plaintiffs thus disclaimed any claim of contractual ambiguity before the trial court.

Rejecting the Board's scope-of-negotiations argument, the trial court determined that it had subject matter jurisdiction to resolve the parties' dispute. It ruled that plaintiffs had proven their vested-rights claim. Relying primarily on the Appellate Division's decision in In re Morris School District Board of Education, 310 N.J. Super. 332, 342-47 (App. Div. 1998), the trial court reasoned that a teacher's right to compensation for accumulated sick leave vests when he or she fulfills the service conditions of a collective negotiations agreement and that his or her vested right to that compensation survives the expiration of that agreement. The court therefore concluded that the Board and the Association lacked the authority to bargain away plaintiffs' vested right to be compensated for unused accumulated sick leave up to

15

$25,000. It granted summary judgment in favor of plaintiffs on their vested-rights claim and denied the Board's cross-motion for summary judgment dismissing that claim.

## B.

The Board appealed the trial court's denial of its motion to dismiss, the court's entry of summary judgment in plaintiffs' favor on their vested-rights claim, and the court's denial of the Board's cross-motion for summary judgment as to that claim. It reiterated its argument that the trial court lacked subject matter jurisdiction to resolve the parties' dispute as well as the arguments that it made before the trial court on the merits of plaintiffs' vested-rights claim.

The Appellate Division concurred with the trial court that the parties' dispute did not present a scope-of-negotiations issue. The court observed that plaintiffs were not permitted to file individual actions before PERC and that neither the Board nor the Association sought to do so. It noted the parties' agreement that the Board and the Association were authorized to negotiate accumulated unused sick leave that would apply prospectively. The Appellate Division ruled that plaintiffs' argument that their rights were vested and thus non-negotiable did not convert their claim into a scope-of-negotiations dispute.

16

It therefore affirmed the trial court's assertion of subject matter jurisdiction over the case.

Addressing the merits of plaintiffs' vested-rights challenge, the Appellate Division agreed with the trial court that in the 2015 Agreement, the Board and the Association unlawfully reduced the cap on teachers' compensation for unused sick leave. Relying primarily on this Court's opinion in Owens v. Press Publishing Co., 20 N.J. 537, 548-49 (1956), and on Morris School District, 310 N.J. Super. at 344-48, the Appellate Division concluded that a teacher earns his or her compensation for unused sick leave during the term of a particular collective negotiations agreement and consequently has a vested right to that compensation which cannot be negotiated away.

The Appellate Division accordingly affirmed the trial court's denial of the Board's motion to dismiss under Rule 4:6-2(e), its grant of summary judgment in plaintiffs' favor on their vested-rights claim, and its denial of the Board's cross-motion for summary judgment dismissing that claim.

C.

We granted the Board's petition for certification. 236 N.J. 259 (2019). We also granted the applications of the New Jersey School Boards Association (NJSBA), the New Jersey League of Municipalities (NJLM), and the New Jersey Education Association (NJEA) to appear as amici curiae.

III.

A.

The Board argues that the Appellate Division narrowed the scope of negotiations by adding to the three-factor <u>Local 195</u>[5] scope-of-negotiations standard a fourth requirement -- that the negotiated item does not implicate a vested right. It contends that the trial court and the Appellate Division improperly relied on case law, rather than contractual intent, to find a vested right to compensation for accumulated unused sick leave. The Board urges the Court to decide this appeal based on the intent of the Board and the Association, as expressed in the clear contractual language that they chose, to change the formula for accumulated unused sick leave compensation.

B.

Plaintiffs counter that the trial court had subject matter jurisdiction to resolve the parties' dispute. They argue that the Appellate Division's recognition of vested rights in this appeal was based on controlling authority, which holds that accrued benefits earned during the term of a contract constitute deferred compensation, and that plaintiffs have a vested right to that compensation. They reiterate their argument that if the Board and the Association intended to abrogate plaintiffs' vested right, they could do so only

---

[5] <u>In re Local 195</u>, 88 N.J. 393, 403-04 (1982).

prospectively or with plaintiffs' individual consent. In an argument raised for the first time in their reply to an amicus brief, plaintiffs assert that by virtue of the respective Savings Clauses in the 2012 and 2015 Agreements, it is unclear whether the Association intended to negotiate away plaintiffs' vested right to compensation for unused sick leave.

C.

Amici curiae NJSBA and NJLM agree with the Board that the subject matter of this appeal meets all three factors of the Local 195 test, and argue that the matter should be submitted to PERC as a scope-of-negotiations dispute. These Amici assert that the plaintiffs' right to compensation for unused sick leave did not constitute a vested right, and that the Board and the Association had the authority to negotiate a limitation on those rights in exchange for concessions by the Board on other issues.

D.

Amicus curiae NJEA contends that the Appellate Division properly applied the Local 195 test without adding a new factor to that test. Amicus argues that plaintiffs' right to compensation for unused sick leave vested when they met the contractual requirements of the 2012 Agreement, and that in order to retroactively abrogate those vested rights, the Board and the Association were required to secure plaintiffs' individual consent.

19

IV.

"We review a grant of summary judgment de novo, applying the same standard as the trial court." Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019). "[S]ummary judgment should be granted 'when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."'" Ibid. (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995) (quoting, in turn, R. 4:46-2)). In this appeal, neither plaintiffs nor the Board asserts that there is a genuine issue of material fact precluding summary judgment.

"In the absence of a factual dispute, we review the interpretation of a contract de novo." Serico v. Rothberg, 234 N.J. 168, 178 (2018).

V.

We first consider the Board's challenge to the trial court's subject matter jurisdiction over this matter, premised on its contention that plaintiffs' vested-rights claim necessitated an initial scope-of-negotiations determination that only PERC had the authority to make.

A.

The Employer-Employee Relations Act (EERA), N.J.S.A. 34:13A-1 to -43, "affords public employees a vast array of rights, including the ability to appoint a majority representative to represent their interest and negotiate agreements on their behalf with an employer." In re County of Atlantic, 230 N.J. 237, 252 (2017). Under the EERA, "[p]roposed new rules or modifications of existing rules governing working conditions shall be negotiated with the majority representative before they are established," and the majority representative and public employer must meet to "negotiate in good faith with respect to grievances, disciplinary disputes, and other terms and conditions of employment." N.J.S.A. 34:13A-5.3.

Public employers "are barred from 'unilaterally altering . . . mandatory bargaining topics, whether established by expired contract or by past practice, without first bargaining to impasse.'" County of Atlantic, 230 N.J. at 252 (ellipsis in original) (quoting Bd. of Educ. v. Neptune Twp. Educ. Ass'n, 144 N.J. 16, 22 (1996)). In contrast to mandatorily negotiable terms and conditions of employment, "[m]atters of public policy are properly decided, not by negotiation and arbitration, but by the political process." In re Local 195, 88 N.J. 393, 402 (1982). Thus, "the scope of public employment negotiation is divided, for purposes of analysis, into two categories of subject

21

matter comprised of mandatorily negotiable subjects and nonnegotiable matters of governmental policy." In re Robbinsville Twp. Bd. of Educ. v. Wash. Twp. Educ. Ass'n, 227 N.J. 192, 198 (2016).

A scope-of-negotiations determination is the method by which it is decided "whether or not a particular subject matter is negotiable"; the court's role is "to determine, in light of the competing interests of the State and its employees, whether an issue is appropriately decided by the political process or by collective negotiations." Local 195, 88 N.J. at 401-02. Under the scope-of-negotiations test that the Court prescribed in Local 195, in order to be deemed negotiable, a subject matter must meet three requirements. Id. at 403-04. First, the subject must "intimately and directly affect[] the work and welfare of public employees." Id. at 403 (quoting In re Paterson Police PBA Local v. City of Paterson, 87 N.J. 78, 86 (1981)). Second, the subject must not have been "preempted by statute or regulation." Ibid. Third, the subject must be one "on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy." Id. at 404 (emphasis omitted) (quoting Paterson Police PBA Local, 87 N.J. at 86).

In the EERA, the Legislature assigned the task of differentiating between negotiable subjects and non-negotiable policy considerations, in the

22

first instance, to PERC, which "shall at all times have the power and duty, upon the request of any public employer or majority representative, to make a determination as to whether a matter in dispute is within the scope of collective negotiations." N.J.S.A. 34:13A-5.4(d). "PERC is [thus] the forum for the initial determination of whether a matter in dispute is within the scope of collective negotiations." State v. State Supervisory Emps. Ass'n, 78 N.J. 54, 83 (1978); see also Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 153-54 (1978) (noting that when a court decides that a dispute "concerns the propriety of the parties negotiating and agreeing on the item in dispute," it "should refrain from passing on the merits of that issue"). PERC's decision, however, is subject to review by the Appellate Division. N.J.S.A. 34:13A-5.4(d).

## B.

We disagree with the Board's contention that by claiming a vested right that could not be bargained away in collective negotiations, plaintiffs raised a scope-of-negotiations issue that only PERC could resolve. Plaintiffs' challenge to the Board's and Association's authority to bargain rights that plaintiffs contend were vested bears no resemblance to a contention that the subject matter in dispute is a non-negotiable managerial prerogative. Neither the Board nor the Association took the position that compensation for unused

23

sick leave is a question of public policy exempt from mandatory negotiation, or sought PERC's review. As the trial court and Appellate Division noted, plaintiffs never argued that the Board and the Association lacked the authority to negotiate changes to the compensation formula for unused sick leave; they contend only that they had vested rights in the payout terms of prior agreements and that, without their approval, the Board and the Association could limit their compensation by collective negotiation agreement only prospectively.[6]

We therefore conclude that the trial court correctly invoked its subject matter jurisdiction in this case, and that the Appellate Division properly affirmed the court's assertion of subject matter jurisdiction over the parties' dispute.

## VI.

### A.

This appeal raises two distinct but related questions of contractual intent. First, we interpret the 2012 Agreement between the Board and the Association.

---

[6] We do not share the Board's view that the Appellate Division improperly added a fourth requirement to the three-pronged Local 195 standard: that the disputed item, in order to be negotiable, must not be a vested right. In light of its holding that this appeal raised no scope-of-negotiations issue, the Appellate Division did not apply -- much less alter -- Local 195's "time-honored test," Robbinsville, 227 N.J. at 199, for scope-of-negotiations disputes.

We consider whether the parties to that Agreement intended to confer on teachers such as plaintiffs, who remained in the Board's employ during the entire term of the 2012 Agreement, a vested right to compensation for accumulated unused sick leave up to a maximum of $25,000.

Second, we construe the 2015 Agreement between the Board and the Association. We determine whether the parties to that Agreement intended to cap compensation at $15,000 for all teachers in the bargaining unit, including teachers who had accumulated unused sick leave worth more than $15,000 under the 2012 Agreement's compensation formula.

In construing both Agreements, our inquiry is governed by "familiar rules of contract interpretation." Serico, 234 N.J. at 178. "It is well-settled that '[c]ourts enforce contracts "based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract."'" County of Atlantic, 230 N.J. at 254 (alteration in original) (quoting Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014)). The plain language of the contract is the cornerstone of the interpretive inquiry; "when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Quinn v. Quinn, 225 N.J. 34, 45 (2016).

If we conclude that a contractual term is ambiguous, we "consider the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining a contract's interpretation." County of Atlantic, 230 N.J. at 255 (quoting County of Morris v. Fauver, 153 N.J. 80, 103 (1998)). "In a word, the judicial interpretive function is to consider what was written in the context of the circumstances under which it was written, and accord to the language a rational meaning in keeping with the express general purpose." Owens, 20 N.J. at 543.

## B.

### 1.

Tracking the language of prior contracts in their 2012 Agreement, the Board and the Association identified two categories of teachers who would be entitled to payment for unused sick leave under that Agreement's compensation formula, which capped total payments at $25,000.

The first category of teachers eligible for such compensation included "[a]ny teacher, who, as of the end of any school year beginning with 09-10, has . . . served the District at least ten (10) years and has retired under the Teachers' Pension and Annuity Fund upon such retirement." Under the plain language of that provision, a teacher needed to meet three requirements in order to be paid by the Board for unused accumulated sick leave. First, the

26

2012 Agreement required at least ten years' service to the District. Second, the Agreement required that the teacher retire under the Teachers' Pension and Annuity Fund. Third, the Agreement required that at the time of his or her retirement, the teacher had sick leave accumulated during his or her service but not used "for additional sick leave as needed in subsequent years." N.J.S.A. 18A:30-3.

The second category of eligible teachers included "any teacher, who, at the end of any school year beginning with 09-10, has . . . served the District at [least] twenty-five (25) years and leaves the employ of the Board for any reason." Under the plain language of that provision, a teacher needed to meet three requirements in order to be paid by the Board for unused accrued sick leave. First, the 2012 Agreement required at least twenty-five years' service to the District. Second, the Agreement required that the teacher depart his or her employment "for any reason." Third, the Agreement required that at the time of the teacher's separation from service, he or she had accumulated sick leave that remained unused.

Under N.J.S.A. 18A:30-3 and the 2012 Agreement, a teacher who remained employed by the Board throughout the term of that Agreement was entitled to accumulate sick leave for later use. Pursuant to the 2012 Agreement, if that teacher used no sick leave during a given year, he or she

27

was entitled to be paid an annual attendance bonus. The 2012 Agreement, however, provided no additional right to be paid for accumulated unused sick leave to a teacher still employed by the Board when that Agreement's term came to an end. That teacher's sick leave remained available to be used, in the event it was needed, during future school years.

2.

Plaintiffs contend that the 2012 Agreement conferred on them a vested right to be compensated under that Agreement's formula, rather than the formula of the successor agreement in effect at the time of their retirement. In the setting of retroactivity analysis, we have defined a vested right to be "a present fixed interest which . . . should be protected against arbitrary state action." Phillips v. Curiale, 128 N.J. 608, 620 (1992) (quoting Pa. Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372, 384 (1954)). "[T]o become vested, a right 'must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exemption from a demand made by another . . . .'" Id. at 621 (quoting Levin v. Township of Livingston, 62 N.J. Super. 395, 404 (Law Div. 1960), aff'd in part, rev'd in part, 35 N.J. 500 (1961)).

Nothing in the 2012 Agreement suggests -- let alone creates -- a vested right to apply that Agreement's compensation formula upon retirement or other

28

separation from service during the term of a successor agreement.[7]  To the

contrary, the 2012 Agreement unambiguously tethers the right to compensation

under the formula to one of two events occurring during the Agreement's term:

the teacher's retirement under the Teachers' Pension and Annuity Fund after at

least ten years' service, or the teacher's departure from employment by the

Board "for any reason" following at least twenty-five years' service.  The 2012

Agreement leaves to successor agreements the terms under which departing

employees will be compensated for unused sick leave in future years.

---

[7]  The Board argued that the 2012 Agreement did not create a vested right to compensation for accrued sick leave, but a conditional right to that compensation that would not vest unless a particular teacher retired or separated from service after serving the required years of service, with accrued sick leave unused.  Our dissenting colleagues contend that a conditional right to such compensation could not be limited absent "clear and unambiguous language in a subsequent collective bargaining agreement."  Post at ___ (slip op. at 2, 5-6).  The dissent's view -- a view advanced by neither the Association in its negotiation of that Agreement or by plaintiffs in this appeal -- finds no support in either the contractual terms at issue or in case law addressing collective negotiations agreements.  Moreover, as the Association acknowledged, plaintiffs' counsel represented to the trial court, and plaintiffs stipulated, the 2015 Agreement unambiguously limited to $15,000 compensation for unaccrued sick leave for all teachers in the bargaining unit, including those who had accrued sick leave under prior agreements that would have been worth more than $15,000 had they retired during the terms of those prior agreements.  Contrary to our dissenting colleagues' contention, post at ___ (slip op. at 4-5), in the absence of ambiguity, the 2015 Agreement's Savings Clause plays no role in the analysis.

The 2012 Agreement's limiting language is unsurprising, given the nature of the employment benefit at issue. A teacher in the Cliffside Park School District who had more than one hundred days of unused sick leave while the 2012 Agreement was in effect, and who continued to work into the term of a successor agreement, faced the prospect that an illness or injury would require the use of some or all of that sick leave. By the time of his or her retirement, that teacher might accumulate more sick leave, might use some of his or her accumulated sick leave, or might have no sick leave remaining. It would make little sense to confer on a teacher a vested right to be compensated under an expired Agreement's formula for accumulated sick leave, given that uncertainty.

In sum, the 2012 Agreement reveals no intent by the Board and Association to confer a vested right to that Agreement's accumulated sick leave compensation formula on teachers such as plaintiffs, who remained in the Board's service after that Agreement was superseded by the 2015 Agreement.

## C.

We next determine the intent of the Board and the Association when they altered the unused sick leave compensation terms in their 2015 Agreement.

30

In the 2015 Agreement, the Board and the Association retained the eligibility criteria prescribed in the 2012 Agreement for unused sick leave compensation. To be eligible for such compensation during the term of the 2015 Agreement, a teacher was required to serve the District for at least ten years and then retire under the Teachers' Pension and Annuity Fund, or serve the District for at least twenty-five years and then separate from service for any reason, with accumulated sick leave still unused at the time of retirement or other separation.

As the parties to this appeal have stipulated, however, the 2015 Agreement modified the unused sick leave compensation terms in two respects: "by reducing the maximum amount of compensation that could be paid for accrued, unused sick leave to $15,000," and "by increasing the amount of compensation for the first 100 days of accumulated sick leave from $125 per day to $150 per day." The amended provisions -- one capping total compensation and the other increasing the per diem payment -- clearly applied to all teachers who met the 2015 Agreement's eligibility requirements and retired or separated from service with unused sick leave during that Agreement's effective term.[8]

---

[8] The Savings Clause that appeared in the 2012 and 2015 Agreements stated that "[u]nless otherwise provided in this Agreement, nothing contained herein shall be interpreted and/or applied so as to eliminate, reduce or otherwise

Accordingly, the plain language of the 2015 Agreement clearly evinces the intent of the Board and the Association, as majority representative for all members of the bargaining unit, to impose a $15,000 cap on the total amount of unused sick leave compensation and to increase the per diem amount of such compensation for the first one hundred days of unused sick leave for any eligible teacher who retired or otherwise separated from service during that Agreement's term. That includes teachers in plaintiffs' position, who had accumulated sick leave potentially worth more than $15,000 during the terms of prior Agreements.

The clear intent of the 2015 Agreement is not only expressed in the plain language chosen by the Board and the Association, but confirmed by the position taken by plaintiffs themselves. Plaintiffs and the Board stipulated that "[t]he Association knowingly bargained the modified accumulated sick leave provision in the [2015] Agreement." Consistent with the testimony of the Association's former President, plaintiffs made clear that they immediately understood -- and objected to -- the impact that the 2015 Agreement would

---

detract from any Teacher benefit existing prior to the effective date of this agreement." That provision confirmed the Board's and the Association's understanding that, from time to time, they would modify teacher benefits in the negotiation of successor agreements. In this case, the reduction of the compensation cap was "otherwise provided" in the 2015 Agreement, and accordingly the Savings Clause in that agreement does not apply.

have on their unused sick leave compensation when they retired. They stipulated that "[u]pon learning of the modification to the accumulated sick leave provision, a number of the affected individuals, including plaintiffs, objected to a modification to [that provision,]" that they did not vote to ratify the 2015 Agreement, and that after ratification, they "continued to object" to the disputed terms.

Indeed, as plaintiffs further stipulated, their objections prompted the Association to ask the Board that "[p]laintiffs, and other affected members, be 'grandfathered' under the accumulated sick leave provision in the prior Agreement and that payment for any sick leave accumulated prior to July 1, 2015 be capped at $25,000, rather than $15,000." The Board rejected that request unless the Association made a concession "that would have impacted the entire membership," a demand that the Association refused.

In short, it is undisputed that in the 2015 Agreement the Board and the Association intended to cap total compensation for unused sick leave at $15,000, no matter when the teacher accumulated that sick leave. As plaintiffs stipulated, they fully understood the import of that change.

Plaintiffs' counsel underscored that position before the trial court. Plaintiffs' counsel confirmed to the trial court the undisputed fact that the Association's representatives "understood what they were doing" when the

33

Association agreed to the modified compensation formula, and that plaintiffs made no claim that the contract language was ambiguous. Plaintiffs reiterated that they challenged the 2015 Agreement based solely on the contention that the Board and the Association lacked the authority to alter the compensation formula as applied to teachers in plaintiffs' position.

Accordingly, the 2015 Agreement clearly expressed the intent of the Board and the Association to alter the compensation formula for all teachers who remained in service, including teachers who had accumulated unused sick leave during the terms of prior agreements.

D.

The trial court and Appellate Division did not rely on contractual language when they ruled that plaintiffs had a vested right to compensation under the 2012 Agreement and that the Board and the Association could not bargain that right away. Instead, both courts viewed case law to recognize, as a matter of law, such a vested right. We disagree.

The trial court and the Appellate Division invoked this Court's decision in <u>Owens</u> for the proposition that payment for unused accumulated sick leave compensation is deferred compensation that cannot be reduced by a subsequent collective bargaining agreement. That decision, however, derived not from an abstract principle of law, but from the specific terms of a collective bargaining

34

agreement. Owens, 20 N.J. at 541-43. The agreement under review in Owens revealed the intent of the union and the employer that an employee would earn severance pay based on his length of service; for every six months that an employee remained in "continuous service, or a major fraction thereof," the employee would earn one week's severance pay, to be paid "[w]hen an employee is discharged for any reason other than gross misconduct." Id. at 541. After the collective bargaining agreement expired with no successor agreement in place, the defendant discharged the plaintiffs for reasons other than gross misconduct, and took the position that it was under no obligation to offer them severance pay. Id. at 542.

Dismissing considerations of vested and contingent rights as "inapposite" in light of the "attribute and purpose" of severance pay, and focusing instead on the contractual terms, this Court rejected the employer's argument. Id. at 545. It concluded that permitting the employer to avoid its severance pay obligation by waiting until the day after the collective bargaining agreement expired to discharge the employees would be "utterly unreasonable" given the contract's express terms. Id. at 546.

The circumstances addressed in Owens starkly differ from the setting of this appeal. In Owens, the contract at issue clearly provided that the severance pay was earned and would be available in the event of an employee's

35

discharge for any reason other than gross misconduct.  Id. at 541.

Nonetheless, the employer sought to unilaterally abrogate the employees'

wholly earned contractual rights.  Id. at 542.  Here, the Board and the

Association agreed to adjust the compensation cap in exchange for concessions

that benefited the bargaining unit's entire membership.  Owens does not

address the issues raised by this appeal.

The trial court and the Appellate Division also relied on the decision of

another Appellate Division panel in Morris School District, 310 N.J. Super. at

342-43.  That appeal arose from a dispute between a board of education and a

union over the recommendation of a PERC-appointed factfinder following a

bargaining impasse over a proposed cap on compensation for unused sick

leave.  Id. at 335.  Rejecting the positions of both the board and the union, the

factfinder recommended that compensation be capped at specific levels, and

that "accumulations exceeding the caps be forfeited" for employees who

declined to promptly retire.  Ibid.  Because the employer and the union had

agreed in advance to adopt the factfinder's recommendation, that

recommendation prompted a constitutional challenge by the union, which

claimed that the cap "would unconstitutionally deprive teachers of vested

benefits and discriminate against older members."  Id. at 336.

The trial court referred the challenge to PERC.  Ibid.  PERC concluded that in light of the factfinder's adoption of a proposal contrary to both parties' positions, the union did not knowingly bargain away accrued sick leave compensation that exceeded the proposed caps.  PERC expressly declined "to decide whether a union could bargain away the accrued wages and benefits of some of its members."  Id. at 336-37.

Affirming PERC's determination, the Appellate Division held that PERC "had the power to create a limited exception" to invalidate a factfinder's proposal "in cases where the factfinder's recommendation, if implemented, would impair the vested or accrued rights or reasonable expectations of the union's members."  Id. at 340.  It stated, however, that it "need not determine whether due process concerns bar a labor union from bargaining away the vested rights of its members," or "decide whether a teacher's accumulated sick leave compensation constitutes an 'accrued right,' a 'vested interest' or a 'mere expectancy.'"  Id. at 341.  The court decided only that the Commission was "empowered to adopt procedural rules it believes are necessary to protect the interests of the negotiating parties," and that "[PERC's] policy barring divestment absent a knowing waiver was reasonable and within its statutory powers."  Id. at 341, 343.

37

Thus, in Morris School District, the Appellate Division expressly declined to confront the issue raised by this appeal:  whether an unambiguous agreement between a school district and a majority representative to reduce the cap on compensation for unused sick leave for all teachers in the bargaining unit must be rejected as implicating a vested right accrued under prior agreements.  Id. at 342-48.[9]

Accordingly, neither Owens nor Morris School District warrants the rejection of the 2015 Agreement's clear and unambiguous provision addressing accumulated unused sick leave.  Instead, the case law underscores the critical importance of contractual intent.

---

[9]  Two other New Jersey cases that were cited by the trial court are similarly irrelevant to this appeal.  New Jersey Ass'n of School Administrators v. Schundler, 211 N.J. 535, 550-51 (2012), involved a challenge based on due process and other principles to regulations promulgated by the Commissioner of Education pursuant to N.J.S.A. 18A:30-3.5, which capped payments for accumulated unused sick leave at $15,000 for employees hired on or after May 21, 2010.  The Court observed that the challenged regulations did not "affect existing agreements or alter terms of employment retroactively" and that the statute "applies purely prospectively."  Id. at 550.  That decision, however, did not address the authority of a public employer and a union to negotiate changes to public employee benefits in a collective negotiations agreement.  Id. at 550-51.  In Caponegro v. State Operated School District of the City of Newark, 330 N.J. Super. 148, 156-61 (App. Div. 2000), the Appellate Division relied on language that it deemed to be contractual to reject what it considered to be the school district's "unilateral divestment" of terminated employees' right to unused sick leave compensation.  Here, plaintiffs allege no attempt by the Board to effect a "unilateral divestment" of their contractual rights.

E.

The trial court and the Appellate Division erred when they concluded that the Board and the Association lacked the authority to reduce the cap on unused accumulated sick leave compensation from $25,000 to $15,000. In light of the contractual language and the record before the trial court, the court should have denied plaintiffs' motion for summary judgment as to their vested-rights claim and entered summary judgment in favor of the Board with respect to that claim.

VII.

The judgment of the Appellate Division is reversed, the trial court's orders granting summary judgment in favor of plaintiffs and denying the Board's motion for summary judgment are vacated, and summary judgment is entered in favor of the Board.


JUSTICES LaVECCHIA, FERNANDEZ-VINA, and SOLOMON join in JUSTICE PATTERSON's opinion. JUSTICE ALBIN dissents in part and concurs in part, joined by CHIEF JUSTICE RABNER and JUSTICE TIMPONE.

39

Paul Barila, William J. Ludwig,
Candace R. Kantor, and Dennis Enrico,

Plaintiffs-Respondents,

v.

Board of Education of Cliffside Park,
Bergen County,

Defendant-Appellant.

JUSTICE ALBIN, dissenting in part and concurring in part.

For more than twenty years, through successive collective bargaining agreements, defendant Cliffside Park Board of Education (Board of Education) guaranteed that its teachers, upon retirement, would be compensated for their accumulated, unused sick leave in an amount not to exceed $25,000. Plaintiffs Paul Barila, William Ludwig, Dennis Enrico, and Candace Kantor relied on the decades-long promises made in those agreements. By the time of the 2015 collective negotiations agreement (2015 Agreement), Barila, Ludwig, and Enrico had accumulated the maximum allowable amount of $25,000 in unused sick leave, and Kantor had accumulated $18,275 in unused sick leave. The 2015 Agreement modified the 2012 and previous agreements, in part, by reducing the maximum amount of compensation for accrued sick leave from $25,000 to $15,000.

1

Unlike the majority, I do not find that the 2015 Agreement extinguished plaintiffs' right to be compensated for the thousands of dollars of unused sick leave accrued over decades of collective negotiations agreements. We need not reach whether the majority representative of a collective bargaining unit and a school district can enter into a collective negotiations agreement that sacrifices the arguably vested rights of some members of the unit. At oral argument, the attorney for the Board of Education stated that payment for accrued sick leave, accumulated under prior collective negotiations agreements, was a conditional right. If the 2015 Agreement intended to strip plaintiff teachers of their right to deferred income -- whether that right is characterized as vested by plaintiffs or as conditional by the Board of Education -- the Agreement had to clearly and unambiguously say so. The 2015 Agreement did not.

Because the language of the 2015 Agreement cannot and should not be construed to abridge the rights of plaintiffs to their accumulated, deferred income -- as the majority does today -- I respectfully dissent.

## I.

A teacher's right to deferred compensation, such as accrued sick leave, accumulated during previous collective negotiations agreements is not expendable -- or at least not easily so. That right cannot be sacrificed, at the

2

very least, in the absence of clear and unambiguous language in a subsequent collective bargaining agreement.

The 2012 Agreement, like its predecessors, contained provisions ensuring that, upon retirement, teachers would be compensated for accumulated, unused sick leave. The 2012 Agreement provided that teachers would be entitled to (1) "ten (10) sick[-]leave days with full pay in each school year"; (2) accumulation of unused sick-leave days "from year to year with no maximum limit"; and (3) payment of accumulated, unused sick-leave days not to exceed a maximum of $25,000 upon retirement. The 2012 Agreement and its predecessors did not confer rights that were conditional or aspirational; rather, they clearly stated that the teachers "shall be paid" for their accumulated, unused sick days not exceeding $25,000 when they retire. The majority reads the language of the 2012 and previous agreements as providing no guarantee to the deferred compensation of unused sick-leave days until the moment a teacher retires. See ante at ___ (slip op. at 28-29). Thus, the majority would hold that if a successor agreement eliminated the payment of accumulated, unused sick-leave days, then a teacher who had accrued unused sick leave valued at $25,000 under previous agreements would be entitled to nothing. Under that approach, the rights of a few, more senior teachers who had accumulated unused sick pay as promised under previous collective

3

negotiations agreements could be sacrificed in a successor agreement to the will of the majority, who had not accrued equivalent unused sick leave.

The 2015 Agreement departed from the terms of previous agreements in one significant way. The 2015 Agreement "reduc[ed] the maximum amount of compensation that could be paid for accrued, unused sick leave to $15,000" upon retirement while "increasing the amount of compensation for the first 100 days of accumulated sick leave from $125 per day to $150 per day." Importantly, the 2015 Agreement nowhere states or suggests that teachers who had accumulated unused sick leave in an amount over $15,000 under previous agreements forfeited the deferred income they accrued in prior years. Indeed, the savings clause of the 2015 Agreement indicates just the opposite. That clause states that "[u]nless otherwise provided in this Agreement, nothing contained herein shall be interpreted and/or applied so as to eliminate, reduce or otherwise detract from any Teacher benefit existing prior to the effective date of this agreement."

As such, the 2015 Agreement acknowledges that certain benefits and rights that existed under prior agreements remain unchanged. Because the 2015 Agreement is silent on the subject of a teacher's right to accumulated, unused sick leave accrued over previous agreements, the savings clause instructs that the 2015 Agreement should not be interpreted "to eliminate,

4

reduce or otherwise detract from any Teacher benefit existing prior to the effective date of this agreement."

In addition, the 2015 Agreement clearly does not express a waiver of the right to the payment of accrued sick leave -- whether that right is denominated as conditional or vested. The waiver of any right by contract "requires some concrete manifestation" of that intent, "reflected in the text of the agreement itself." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 135 (2001). "[U]nder New Jersey law, any contractual 'waiver-of-rights provision must reflect that [the party] has agreed clearly and unambiguously' to its terms." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 443 (2014) (second alteration in original) (quoting Leodori v. Cigna Corp., 175 N.J. 293, 302 (2003)). The "benefits" accrued by the teachers in prior agreements were not clearly and unambiguously waived or extinguished by the 2015 Agreement. The survival of those accrued sick-leave benefits, moreover, is consistent with our approach in Owens v. Press Publishing Co. See 20 N.J. 537, 548 (1956).

In Owens, we examined an employee's right to severance pay under the terms of a collective negotiations agreement that had terminated before a new agreement had been reached. Id. at 541-42. There, we found that severance pay "was not conditioned upon the employee's discharge from service within

5

the term of the collective agreement," and that "once the right thus comes into being it will survive the termination of the agreement." Id. at 548. In other words, even though the event triggering the right to payment -- discharge from employment -- occurred after the termination of the prior contract, the right conferred during that contract -- severance pay -- was not altered or extinguished. Ibid.

Here, under the terms of prior agreements, including the 2012 Agreement, plaintiffs had the right to the payment of accrued sick-leave days not to exceed $25,000. That right was not extinguished by the 2015 Agreement.

In In re Morris School District Board of Education, after a careful review of this Court's jurisprudence, the Appellate Division concluded that "deferred compensation" -- such as the "teachers' right to accumulated sick leave" -- "generally survives expiration of the term of the [collective bargaining] agreement." 310 N.J. Super. 332, 345 (App. Div. 1998). The Appellate Division also determined that a teacher's "right to accumulated sick[-]leave compensation . . . in a real sense constituted remuneration for services rendered during the periods covered by the prior collective bargaining agreements and was deserving of special protection." Id. at 345-47 (collecting decisions from other jurisdictions that "have held that a union has no authority

6

on behalf of its membership to bargain away various forms of deferred compensation earned during the terms of prior collective bargaining agreements <u>absent knowing consent by those who would be adversely affected</u>" (emphasis added)).

A number of jurisdictions have recognized that accumulated sick pay is a form of deferred compensation entitled to "special protection." For example, in <u>Gilman v. County of Cheshire</u>, the Supreme Court of New Hampshire held that a former corrections officer "had a vested right to payment for certain accumulated, but unused, sick leave from a public employer," despite the employer's later change in sick-leave policy. 493 A.2d 485, 486-87 (N.H. 1985). The New Hampshire high court rejected the public employer's argument that the corrections officer did not have a vested right to payment for his unused sick leave, which had accrued under the earlier policy. <u>Id.</u> at 487-88. The Court determined that payment to an employee for working instead of using sick leave, as authorized pursuant to an employment policy, "is not a mere gratuity, but constitutes compensation for services rendered." <u>Id.</u> at 488. By that reasoning, the corrections officer's right to compensation vested when he rendered his services to his employer. <u>Ibid.</u> Thus, the New Hampshire Supreme Court concluded that "the employer could not impair its obligation to pay those benefits by changing its sick[-]leave policy after the compensation

7

was earned so as to divest the rights of those already benefitting from it." Ibid.; see also, e.g., Lawrence v. Bd. of Educ. of Sch. Dist. 189, 503 N.E.2d 1201, 1209 (Ill. App. Ct. 1987) (finding that a plaintiff was entitled to payment for accumulated sick leave accrued under an employment provision before its repeal because "[o]nce that service condition was fulfilled, the benefit . . . was vested"); Knecht v. Bd. of Trs. for State Colls. & Univs. & Nw. State Univ., 591 So. 2d 690, 692, 694 (La. 1991) (finding that "plaintiffs had a vested right in accumulated, but unused, compensatory leave accrued" during the then-effective compensatory leave policy and that those accrued benefits could not be abrogated by a later-adopted policy).

In the case before us, we need not decide whether unused sick leave accrued over the course of prior collective negotiations agreements is a vested right that can be extinguished by a subsequent agreement. Following the logic of In re Morris, however, we should recognize that the right to payment for unused sick leave is a form of deferred compensation "deserving of special protection." See 310 N.J. Super. at 345. Therefore, in the absence of clear and unambiguous language that the $15,000 cap in the 2015 Agreement retroactively applies to those who had already accumulated more than $15,000 in unused sick leave under previous agreements, the 2015 Agreement should be applied prospectively.

8

II.

In summary, the 2015 Agreement sets forth a new cap for accumulated, unused sick days and new rates of compensation for such unused sick days. The 2015 Agreement, however, is completely silent about the right of teachers to deferred compensation for unused sick leave accrued during previous agreements. The savings clause of the 2015 Agreement instructs that the Agreement should not be interpreted to "eliminate" or "reduce" "any Teacher benefit existing prior to the effective date of [that] agreement." Accordingly, the 2015 Agreement does not clearly and unambiguously waive plaintiffs' right to payment for unused sick leave accrued under successive prior agreements over decades.

The parties' stipulation that the 2015 Agreement "reduc[ed] the maximum amount of compensation that could be paid for accrued, unused sick leave" and that "[t]he Association knowingly bargained" for that reduction, does not suggest in any way that the new cap on accumulated sick leave applies retroactively to those who had already accrued more than $15,000 in sick leave. The majority representative's subjective understanding about the retroactive application of the 2015 Agreement cannot override the language -- or lack of language -- in the Agreement voted on by the members of the Association. The words in that Agreement are what matter. There are no clear

9

and unambiguous words that suggest the 2015 Agreement's sick-leave cap applies retroactively to extinguish plaintiffs' right to compensation for accrued sick leave under prior agreements.

## III.

I concur with the majority in its analysis of the scope-of-negotiations issue and would likewise hold that the trial court correctly invoked its subject matter jurisdiction in this case.  See ante at ___ (slip op. at 24).

I disagree, however, with the majority's interpretation of the 2015 Agreement that retroactively divests Barila, Ludwig, and Enrico each of $10,000 and Kantor of $3,275 of deferred compensation accrued under prior collective negotiations agreements.  They were entitled to rely on the promises in previous agreements.  Because the majority has rendered those promises illusory, I respectfully dissent.